IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| WESTERN WATERSHEDS PROJECT,<br><br>    Plaintiff,<br><br>v.<br><br>JOE KRAAYENBRINK, BLM Idaho Falls District Manager, KATHLEEN CLARKE, BLM Director; and BUREAU OF LAND MANAGEMENT,<br><br>    Defendants. | Case No. CV-05-297-E-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it a renewed motion for injunction filed by plaintiff WWP.  In an earlier decision, the Court enjoined the public participation provisions of newly-issued amendments to BLM grazing regulations, but declined to enjoin other provisions dealing with the ownership of range improvements and the use of range condition criteria known as the Fundamentals of Rangeland Health (FRH).[1]  These latter two issues, the Court found, were not ripe for review under

---

[1] That decision was issued in two cases, *WWP v. Kraayenbrink, Civ. No. 05-297-E-BLW* and *Maughn v. Rosenkrance, Civ. No. 06-275-E-BLW*.  The present motion – WWP's renewed motion for injunction – was only filed in *Kraayenbrink*, and hence this decision does not apply to *Maughn*.

**Memorandum Decision and Order – Page 1**

*Earth Island Institute v. Ruthenbeck*, 2006 Wl 2291168 (9th Cir. August 10, 2006). The Court issued its decision just a day after *Earth Island* was released, and neither party here had an opportunity to brief the impact of that case. The Court therefore characterized its decision as preliminary in nature, and invited further briefing on the issue.

WWP has responded by filing a renewed motion for injunctive relief, asserting that *Earth Island* is distinguishable. The BLM does not dispute that point, but argues instead that WWP has failed to show the immediate and irreparable harm that is required to obtain an injunction.[2]

## ANALYSIS

**1.   Ripeness**

The Court agrees with WWP that *Earth Island* is distinguishable. That case did not involve claims akin to those made here that NEPA's procedures were not followed. "[A] person with standing who is injured by a failure to comply with the NEPA procedure may complain of that failure at the time the failure takes place, for the claim can never get riper." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 737 (1998). WWP's claims that the regulatory amendments regarding range

---

[2] The Court earlier found that oral argument is not necessary on WWP's motion. *See Docket Entry Order (Docket No. 68).*

**Memorandum Decision and Order – Page 2**

improvements and FRH criteria were passed in violation of NEPA's procedural requirements are ripe for review.

## 2.     Changes to the FRH

The Final Rule changes the BLM's reliance on the FRH criteria in three ways. First, the BLM need not rely on the FRH at all if state-specific Standards and Guidelines are in place. Second, the BLM may no longer rely on "all available data" in determining whether Standards and Guidelines are being violated but is required to use only multi-year monitoring data. Third, the BLM is no longer required to take immediate action upon finding violations but may instead take 24 months to adopt a new grazing decision and then take an additional year to implement that decision.

## 3.     Changes to Range Improvement Ownership

The Final Rule amends 43 C.F.R. § 4120.3-2 to allow shared title of permanent range improvements constructed under cooperative range improvements agreements. Title would be shared in proportion to the permittee's and Government's contributions to the on-the-ground project development and construction costs.

## 4.     Effective Date of Changes

The new regulations took effect on August 11, 2006.

5. **Injunction Standard**

A plaintiff may obtain a preliminary injunction by showing "(1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest." *Earth Island Institute v. United States Forest Service*, 442 F.3d 1147, 1158 (9th Cir. 2006). Alternatively, a court may grant a preliminary injunction if a plaintiff "demonstrates either a combination of probable success on the merits and the possibility of irreparable harm or that serious questions are raised and the balance of hardships tips sharply in his favor." *Id*.

2. **NEPA Legal Standards**

To determine the strength of WWP's case on the merits – a necessary finding in the injunction test set forth above – the Court must identify the legal standards governing NEPA claims. The Court's review is governed by the Administrative Procedures Act (APA). *See Native Ecosystems Council v. United States*, 418 F.3d 953, 961 (9th Cir. 2005). Under the APA, the Court may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Although this standard is a "narrow one," the Court is required to "engage in a substantial

**Memorandum Decision and Order – Page 4**

inquiry[,] . . . a thorough, probing, in-depth review." *Native Ecosystems*, 418 F.3d at 961. To have not acted in an arbitrary and capricious manner, the agency must present a "rational connection between the facts found and the conclusions made." *Id*. More specifically to this case, "an agency changing its course by rescinding a rule is obligated to supply a reasoned analysis for the change beyond that which may be required when an agency does not act in the first instance." *Motor Vehicle Manufacturers Assoc. v. State Farm*, 463 U.S. 29, 42 (1983).

In reviewing the adequacy of an Environmental Impact Statement (EIS) under NEPA, the Court applies the "rule of reason" standard, which "requires a pragmatic judgment whether the EIS's form, content, and preparation foster both informed decision-making and informed public participation." *Id*. at 961. The Court must ensure that the agency has taken a "hard look" at the potential environmental consequences of the proposed action. *Id*.

3.   **Chance of Success on the Merits**

WWP argues that the BLM suppressed the views of its own experts who concluded that the changes to regulations governing the FRH and range improvements will have adverse effects on wildlife and riparian conditions, among other effects. The expert opinions referred to by WWP were rendered by members of a panel of wildlife biologists and other scientists convened by the BLM to study

**Memorandum Decision and Order – Page 5**

the environmental effects of the proposed regulations. This panel issued a report referred to as the Administrative Review Copy Draft EIS (ARC-DEIS).

The ARC-DEIS was issued on November 17, 2003, just three weeks before the publication of the proposed changes on December 8, 2003. That portion of the report contained in the Court's record is quite critical of the new regulations. For example, it concluded that the new regulations will cause (1) "a slow long-term adverse effect on wildlife and biological diversity in general," *see ARC-DEIS* at p. 27; (2) "[u]pland and riparian habitats [to] continue to decline," *id*.; and (3) [t]he numbers of special status species [to] continue to increase." *Id.*

Addressing the changes to ownership of range improvements, the ARC-DEIS concluded that they will have a "very long-lasting adverse effect to the wildlife of the public lands of the West." *Id*. at p. 10. The report explains that "by establishing ownership of water or range improvements the livestock operator will have the right to graze and greatly diminishes the ability of the BLM to regulate grazing and will create long-term impacts to wildlife resources." *Id.*

With regard to the FRH changes, the report concluded that (1) the BLM "lacks sufficient funding and staffing to perform adequate monitoring," *id*. at p. 11; and (2) that the changes "could have significant and long-term adverse effects on wildlife resources and biological biodiversity in general . . . ." *Id.*

The discussion in the ARC-DEIS is scientific in nature with heavy citation to numerous authorities and studies.  The authors are BLM experts.  For example, one author was Erick Campbell, a wildlife biologist who had worked for the BLM for 30 years.  Another was William Brookes, a BLM hydrologist for 34 years.

The BLM circulated the ARC-DEIS internally.  In the circulation cover letter, the BLM's Assistant Director sets a quick deadline for comments because "[t]he proposed regulations have been completed and will be announced in early December 2003."

The BLM set November 28th as the deadline for internal comments on the ARC-DEIS.  To review these comments and the ARC-DEIS "as rapidly as possible," the BLM "assembled a small team to review and revise the draft documents [ARC-DEIS]."  *See Borchard Affidavit* at p. 3.  The BLM does not identify the team members.

Borchard goes on to state that "this team reached a consensus that revisions to the draft materials were necessary based on their analysis of the draft in light of the proposed regulations and rangeland experience."  *Id*.  Basically, this team removed the critical analysis contained in the ARC-DEIS.

This major revision of the ARC-DEIS occurred quite quickly.  From the comment deadline of November 28th, the proposed regulations were published just

**Memorandum Decision and Order – Page 7**

10 days later (December 8, 2003), and the DEIS was issued just 35 days later (January 2, 2004).

The BLM did not discuss the ARC-DEIS revisions in any detail in either the DEIS or the FEIS. It was not until March 31, 2006 – eight months after the FEIS was issued – that the BLM issued an Addendum to the FEIS that discussed the criticisms contained in the ARC-DEIS and the BLM's reasoning for rejecting them. Less than four months later – on July 12, 2006 – the BLM issued its Final Rule and Record of Decision (ROD), adopting the proposed changes without allowing any public comment on the Addendum's explanation as to why the ARC-DEIS was revised.

Under NEPA, "[a]gencies shall insure the professional integrity, including scientific integrity, of the discussions and analyses in environmental impact statements. They shall identify any methodologies used and shall make explicit reference by footnote to the scientific and other sources relied upon for conclusions in the statement." *Earth Island*, 442 F.3d at 1159-60. There are serious questions whether the BLM complied with this standard.

First, the BLM apparently drafted the proposed regulations without waiting for the ARC-DEIS, given the statement in the circulation cover memo quoted above. Second, the BLM moved with extraordinary speed to reject the substantial

**Memorandum Decision and Order – Page 8**

ARC-DEIS criticisms, raising serious questions about whether the agency took a "hard look" at those criticisms.

Third, and most importantly, the ARC-DEIS does not nit-pick around the margins of the new regulations but rather strikes at their heart. And it is not a challenge by a outsider group, but instead comes from the BLM's own experts. In other words, the ARC-DEIS is a critical analysis that must be addressed by the BLM in its NEPA analysis, which in turn allows the public to provide input on the BLM's analysis. Nevertheless, the BLM did not explain in detail the report's conclusions, and its rejection of them, in the DEIS or the FEIS. It was not until after those reports were issued – and the public comment period had ended – that the BLM explained itself in the Addendum to the FEIS issued eight months after the FEIS. Even then, the Addendum discussion does not discuss many of the points raised by the ARC-DEIS authors, and fails to explain why the citations to scientific authorities was redacted. The BLM's failure to explain itself in the DEIS and FEIS deprived the public of its ability to comment on the BLM's reasoning process.[3] *See Earth Island*, 442 F.3d at 1159 (holding that an FEIS meets the hard look requirement only if it "foster[s] both informed decision-making and informed public participation").

---

[3] The BLM has not directed the Court to anything in the record showing a public comment period on the Addendum.

**Memorandum Decision and Order – Page 9**

Certainly the BLM has broad discretion to resolve conflicts among its own experts. The current record, however, reveals nothing about the identities and qualifications of the team members who disagreed with the ARC-DEIS. The Court therefore has no basis to conclude that the BLM made a reasonable call between conflicting experts.[4]

This analysis shows that WWP has a strong likelihood of success on the merits concerning its challenge to the new regulations concerning the FRH and the ownership of range improvements. WWP has also shown a possibility of irreparable harm.

The BLM has scheduled rangeland health assessments over the next few months on over a million acres of Idaho grazing land. *See Fite Declaration* at ¶¶ 57-58. Thus, the new regulations – with all of the environmental harm detailed by the BLM's experts in the ARC-DEIS – will have an immediate impact.

Moreover, there are a number of range improvements currently being considered by the BLM in its Idaho Field Offices, and obviously many more nation-wide. *Id*. at ¶ 109. The whole purpose of the revisions on range

---

[4] The Court recognizes that the BLM has not had time to provide the Court with the entire record. Certainly the Court will allow the BLM to do so before any further proceedings. However, the Court must rule on the motion for preliminary injunction on the record before it, and given the need for an expedited decision, the Court cannot await the further development of the record.

**Memorandum Decision and Order – Page 10**

improvements was to stimulate private investment and promote the number of improvements. *See FEIS* at p. 4-25. The Court is not persuaded that range improvements will increase at a measured and limited rate when they are being so promoted by the authorizing agency.

In other words, it is clear that the new regulations will have immediate impacts. The ARC-DEIS explains how those impacts are irreparable. The BLM responds that no irreparable harm exists until the actual range improvements are authorized or the FRH-less assessments are done. This is really a call to require WWP to individually challenge each improvement and assessment. Yet the irreparable harm lies in the cumulative impact – the ARC-DEIS analysis was not that any single range improvement or FRH-less assessment would cause irreparable harm, but that the cumulative effect would be detrimental. Granted, there may be no bright line as to when the irreparable harm becomes evident – perhaps it is after 10 range improvements, or maybe 100. But irreparable harm will occur, and, given that, the inability to know precisely when it will occur is actually the strongest argument for an immediate injunction.

The Court also finds that the balance of hardships tips decidedly toward WWP. The BLM advances no reason to immediately place these new regulations into effect. Given the lengthy course of the BLM's development of these new

**Memorandum Decision and Order – Page 11**

regulations, there appears to be no urgent need for them. Finally, WWP is acting in the public interest.

**4.    Conclusion**

For all these reasons, the Court will enjoin the new BLM regulations that change the rules on (1) the FRH criteria, and (2) the ownership of rangeland improvements.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the Renewed Injunction Motion (Docket No. 63) is GRANTED and the new BLM regulations changing the rules on (1) the Fundamentals of Rangeland Health, and (2) the ownership of rangeland improvements, are hereby ENJOINED.

IT IS FURTHER ORDERED, that this preliminary injunction shall last until the Court can hear the parties as to whether a permanent injunction should issue.

IT IS FURTHER ORDERED, that counsel are directed to contact the Court's Clerk, LaDonna Garcia (208) 334-9021to schedule further matters in this case.

DATED: **September 25, 2006**

*/s/ B. Lynn Winmill*
B. LYNN WINMILL
Chief Judge
United States District Court`